IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JOVAN FELICIANO,
        Petitioner,

v.                                                Case No.  4:08cv337/RH/MD

WALTER A. MCNEIL,
        Respondent.

_____

ORDER and
REPORT AND RECOMMENDATION

Before the court is an amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. 5).  Respondent filed a response and motion to expand the record, submitting relevant portions of the state court record.  (Docs. 20 and 19, respectively).  Petitioner filed a reply.  (Doc. 24).  Although given the opportunity to respond to the motion to expand the record, petitioner has not done so.  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

On June 15, 2004, petitioner was charged in the Circuit Court of Leon County, Florida, case number 04-1973, with violating section 794.05, Florida Statutes, by engaging in sexual activity with W.H. by penetrating W.H.'s vagina with his penis while W.H. was 16 or 17 years of age and petitioner was 24 years of age or older. (Doc. 20, Ex. A, p. 1).[1]  Prior to trial defense counsel filed a motion to dismiss the charge on the grounds that § 794.05 was unconstitutional as a strict liability crime and violated petitioner's right to due process, because it prohibited the raising of lack of guilty knowledge as a defense.  (*Id.*, pp. 54-58).  The trial court denied the motion.  (*Id.*, p. 59; Ex. C, p. 3).

At trial, the victim W.H. testified that she was born on October 18, 1986.  (Ex. C, p. 38). She met petitioner in November or December of 2003 at Firehouse Subs where they both worked.  She was 17 years old.  (*Id.*, pp. 39, 44).  W.H. and petitioner became friends and then started dating.  (*Id.*, p. 40).  W.H. and petitioner had sex at W.H.'s residence on more than 5 occasions.  (*Id.*, p. 41).  W.H. clarified that sex meant petitioner put his penis into her vagina.  (*Id.*).  W.H. and petitioner also had sex at petitioner's residence on more than 10 occasions.  (*Id.*, pp. 41-42).  This sexual activity began in December of 2003 after Christmas, and continued for a couple of months while W.H. was a junior in high school.  (*Id.*, pp. 42-43).  On cross examination, W.H. admitted that she did not want to testify in the case; that she was a willing participant in the relationship; and that she told petitioner she was 18 years old.  (*Id.*, pp. 43-44).

Leon County Sheriff's Office Detective Dawn Butler testified that she interviewed petitioner.  Prior to the interview Butler read petitioner his *Miranda*[2]

---

[1]Hereafter all references to exhibits will be to those provided at doc. 20, unless otherwise noted.  References to page numbers, except those of the trial transcript, are to the Bates stamp appearing in the bottom right-hand corner of the page.  References to page numbers of the trial transcript are to those appearing in the upper right-hand corner of the transcript.

[2]*Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612 (1966).

rights, and petitioner signed the warning form indicating that he understood his rights. (*Id*.).  The warning form provided:

> Before we ask any questions, you must understand your rights as set forth in the Miranda court decision.  You have the right to remain silent.  Anything you say can and will be used against you in a court of law.  You have the right to talk to a lawyer and have him present with you during questioning.  If you can't afford to hire a lawyer, one would be appointed for you before any questioning, if you wish.  And you can decide at any time to exercise these rights and not answer any questions or make any statements.

(*Id.*, p. 49).  Petitioner also signed the waiver portion.  (*Id.*, pp. 48-49).  The waiver read:

> I have been advised of my rights and I understand what my rights are.  I am willing to make a statement and answer any questions.  I understand and know what I'm doing.  No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

(*Id.*).  During the interview petitioner revealed the following with regard to his relationship with W.H.:  (1) that the two had a sexual relationship, (2) that he met W.H. at Firehouse Subs where the two worked, (3) that he had sexual relations with W.H. 10-20 times, (4) that W.H. was 17 years old and attended Lincoln High School, and (5) that he and W.H. generally had sex at his residence.  (*Id.*, pp. 49-51).  At the time Butler spoke to petitioner, he was 26 years old.  (*Id.*, p. 50).

Petitioner's driver's license records were admitted into evidence to establish his age.  (*Id.*, pp. 46-47).  Petitioner's date of birth is May 14, 1978.  (*Id.*, p. 50).

The jury found petitioner guilty as charged.  (Ex. A, p. 76).  On July 1, 2005, petitioner was sentenced to 85.5 months imprisonment followed by 7 years of sex offender probation.  (*Id.*, pp. 79-84).  Petitioner's conviction and sentence were affirmed on direct appeal, in a published opinion issued September 20, 2006.  *Feliciano v. State*, 937 So.2d 818 (Fla. 1st DCA 2006) (copy at Ex. F).  Petitioner filed a notice to invoke the discretionary jurisdiction of the Florida Supreme Court.  (Ex. G).  On January 10, 2007, the state supreme court declined to accept jurisdiction and denied the petition for review.  *Feliciano v. State*, 948 So.2d 758  (Fla. 2007) (Table)

(copy at Ex. J).

On September 27, 2007, petitioner filed a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. K, pp. 1-15). The trial court denied relief, (*id.*, pp. 109-12), and the appellate court affirmed without written opinion.  *Feliciano v. State*, 982 So.2d 1180 (Fla. 1st DCA 2008) (Table) (copy at Ex. N).  The mandate issued June 18, 2008.  (Ex. O).

Petitioner initiated the instant federal habeas proceeding on July 25, 2008. (Doc. 1).  His amended petition was filed on August 13, 2008.  (Doc. 5).  Respondent concedes the petition is timely.  (Doc. 20, p. 12).

## STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); *Ramdass v. Angelone*, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).   The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by Parker v. Head*, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  *Lockyer*, 538 U.S. at 73 (quoting *Williams*, 529 U.S. at 405–06).   The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting *Williams*, 529 U.S. at 405–06).   If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  *Williams*, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.  *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S.

685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).  The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." *Williams*, 529 U.S. at 410–12; *see also Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold").

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see e.g. Miller-El*, 537 U.S. at 340 (explaining that a federal court can

disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); *Jones v. Walker*, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti v. Quarterman*, 551 U.S. 930, 127 S. Ct. 2842, 2858, 168 L.Ed.2d 662 (2007); *Jones*, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

## PETITIONER'S GROUNDS FOR RELIEF

**Ground 1**      **Trial Counsel Was Ineffective For Failing To Investigate And File A Motion To Suppress Petitioner's Alleged Admissions To Detective Butler.  (Doc. 5, pp. 4-8)**

In his first ground for relief, petitioner contends counsel was deficient for failing to review petitioner's interview with Detective Butler, and for failing to move to suppress petitioner's admission to Butler that he had sexual intercourse with "a 17 year old female who attended Lincoln High School."   The undisputed facts concerning this claim (as established by petitioner's amended petition, respondent's answer, and the state court record) are as follows.

Detective Dawn Butler's interview of petitioner took place on May 26, 2004. Butler initiated the interview to discuss allegations that petitioner had sexually assaulted his girlfriend's 13-year-old daughter (S.T.).  Butler advised petitioner of his *Miranda* rights, and petitioner signed a waiver of those rights.  During questioning, petitioner denied the allegations concerning S.T., and agreed to submit to buccal

swabs for DNA analysis.  In response to Butler discussing that she would be checking S.T.'s bed linens for the presence of petitioner's DNA, petitioner advised Butler that he had had sex numerous times on S.T.'s bed.  According to Butler, petitioner identified this sexual partner as "a 17 year old female who attended Lincoln High School."  Petitioner then identified the female (W.H.) by name.  (Doc. 5, p. 6; Doc. 20, p. 18; Doc. 20, Ex. A, p. 2).

According to petitioner, counsel should have moved to suppress his admission on three bases:  (1) contrary to Butler's trial testimony, petitioner did not state that the female was 17 years old - he said only that he "had sexual intercourse with a female on S.T.'s bed, but did not say the age of the female;" (2) there was no audio or video recording of petitioner's interview with Detective Butler, and thus no "physical proof" of petitioner's admission; and (3) petitioner's admission to Detective Butler was coerced and the waiver of his *Miranda* rights invalid because the purpose of the interview was to discuss allegations that petitioner sexually assaulted S.T.; therefore, his *Miranda* waiver was exclusive to that charge and could not be applied to his later admission concerning W.H. unless he was re-*Mirandized* and signed another waiver.  (Doc. 5, p. 7).  Respondent concedes petitioner exhausted his state court remedies with respect to this claim by raising it in his Rule 3.850 motion.  (Doc. 20, p. 14).

A.     Clearly Established Federal Law

In order to prevail upon a claim of ineffective assistance of counsel, the petitioner must prove that:  (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"The purpose of ineffectiveness review is not to grade counsel's performance."  *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing

*Strickland*).  In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable, professional assistance.  *Chandler* at 1314.  "Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).  In evaluating the reasonableness of counsel's actions, a court must make "every effort . . . to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.  As the Eleventh Circuit has emphasized:

> We must avoid second-guessing counsel's performance:  "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance."  *Waters* [*v. Thomas*, 46 F.3d 1506], 1522 (en banc).  Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.  *Chandler* at 1314 (footnote omitted).  Moreover, an ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation.  Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment.

*Chandler* at 1314 n.15.

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than simply that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  466 U.S. at 693, 104 S.Ct. at 2067.  Instead, the petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*, at 694, 104 S.Ct. at 2068.  Without support in the record, bare allegations that the petitioner was prejudiced by counsel's performance are not sufficient.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).  In applying *Strickland* the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs.  *Strickland*, 466 U.S. at 697, 104 S.Ct.

at 2069.

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).

**B.      State Court Decision**

Petitioner raised this claim in his Rule 3.850 motion.  After citing *Strickland* as the controlling legal standard, the trial court denied relief as follows:

> Defendant claims his counsel was ineffective for failing to investigate the substance of his interview with Detective Butler.  Specifically, Defendant claims he never admitted knowing that the victim was under 18, and that his counsel should have moved to suppress the statement on the basis that he never made it.  This argument is nonsensical. Whether or not Defendant admitted anything to the detective is not a legal basis to suppress the statement, but rather an appropriate topic for cross-examination.  Defense counsel adequately cross-examined the detective on this point.  Additionally, given that Defendant's knowledge of the victim's age was not an element of the crime, he is unable [to] show any prejudice resulting from any alleged deficiency. Ground 2 is denied.
>
> Defendant claims his counsel was ineffective for failing to file a motion to suppress his post-<u>Miranda</u> statements as not voluntarily made.  Defendant argues that he was being investigated for engaging in sexual activity with a 13-year-old, and that he never waived his rights as to the current case involving a 17-year-old victim.  This claim is legally erroneous and otherwise conclusively refuted by the record. Investigators are not required to inform a defendant of all possible charges against him, and such knowledge is not material to a valid waiver.   Rather, the relevant question is whether a defendanat adequately understands his rights and the consequences of waiving them.  <u>Colorado v. Spring</u>, 479 U.S. 564 (1987).  Detective Butler described at length the process by which she informed Defendant of his rights and the waiver he signed.  Defendant voluntarily provided information about the victim in this case as a way to explain how his

DNA could be found in the bed of a 13-year-old girl.  There was never an opportunity or reason to give <u>Miranda</u> warnings on this point because the information was unsolicited and spontaneously given by defendant.  At sentencing, Defendant himself affirmed the validity of the waiver, stating, "I gave up my rights, I spoke freely and willingly." There was no basis at the time of trial – nor does there exist one now – to suppress the statement, and defense counsel is not ineffective for failing to file the motion.  See <u>Engle</u>, 576 So.2d at 704 (Fla. 1991). Ground 3 is denied.

(Ex. K, pp. 110-12) (references to attachments omitted).  The state appellate court affirmed.

C.      Federal Review of State Court Decision

The court will first address petitioner's contention that counsel should have moved to suppress Detective Butler's testimony that petitioner admitted knowing the age of W.H. on the grounds that:  (1) he never stated W.H. was 17 years old, and (2) there was no audio or video recording of the interview and therefore no "physical proof" of this admission other than Butler's testimony.   As the state court reasonably concluded, these two assertions provide no legal or factual basis for filing a motion to suppress because they go to the weight of the evidence (the credibility of Butler's testimony), not its admissibility.  The appropriate vehicle for attacking the credibility of evidence is through cross-examination, which defense used.  Therefore, because a motion to suppress on petitioner's proffered bases would not have been successful, counsel cannot be found deficient for failing to make it.  *See Freeman v. Attorney General, Florida,* 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."); *see also Brownlee v. Haley,* 306 F.3d 1043, 1066 (11th Cir. 2002) (concluding that counsel was not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore,* 240 F.3d 907 (11th Cir. 2001) (concluding that counsel was not ineffective for failing to raise a non-meritorious objection); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").  The state court did not unreasonably

apply *Strickland* in concluding that petitioner failed to establish deficient performance.

The state court was also reasonable in concluding that petitioner failed to establish prejudice.  A habeas petitioner cannot be prejudiced by his counsel's failure to make a losing argument.  *See Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (concluding that federal habeas petitioner "cannot be prejudiced by his counsel's failure to make a losing objection").  Moreover, as the state court found, petitioner's knowledge of the victim's age was not an element of the crime, nor was ignorance or mistake of age a valid defense.  *See* Fla. Stat. § 794.05;[4] Fla. Stat. § 794.021;[5] *Feliciano v. State*, 937 So.2d 818 (Fla. 1st DCA 2006).  In light of the undisputed evidence (W.H.'s testimony) that W.H. was 17 years old at the time she and petitioner had sexual intercourse, and given the fact that petitioner's knowledge of W.H.'s age was irrelevant, petitioner cannot establish a reasonable probability that but for counsel's failure to exclude petitioner's admission that W.H. was 17 years old, the result of the proceeding would have been different.

The state court's denial of relief on this aspect of petitioner's ineffective assistance claim was not contrary to, or an unreasonable application of, clearly established federal law and was not the result of an unreasonable determination of the facts in light of the evidence in the state court record.

As to petitioner's contention that counsel should have moved to suppress his

---

[4]Section 794.05, Florida Statutes, provides in pertinent part:

(1)  A person 24 years of age or older who engages in sexual activity with a person 16 or 17 years of age commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.  As used in this section, "sexual activity" means oral, anal, or vaginal penetration by, or union with, the sexual organ of another; however, sexual activity does not include an act done for a bona fide medical purpose.

[5]Section 794.021, Florida Statutes, provides:

When in this chapter, the criminality of conduct depends upon the victim's being below a certain specified age, ignorance of the age is no defense.  Neither shall misrepresentation of age by such person nor a bona fide belief that such person is over the specified age be a defense.

statements on the grounds that his waiver of his *Miranda* rights was not valid, this claim too must fail, because it provided no arguably valid basis to suppress petitioner's statements.  The essential facts underlying this claim are undisputed. Deputy Butler arranged an interview with petitioner to discuss the allegations concerning S.T.  Butler informed petitioner of his Fifth Amendment privilege in precisely the manner specified by *Miranda*.  Petitioner signed a statement that he understood and waived his rights and was willing to answer questions.  Butler then questioned petitioner about the allegations concerning S.T.  During a discussion of whether petitioner's DNA would be found on S.T.'s bed linens, petitioner said that it would, because he had had sexual intercourse in S.T.'s bed with W.H.  According to Butler, petitioner described W.H. as "a 17 year female who attended Lincoln High School."  (Doc. 5, pp. 5-8; Doc. 20, p. 18; Ex. A, pp. 2-3; Ex. C, pp. 48-50).

In essence, petitioner argues that his *Miranda* waiver was not voluntary because Butler indicated she was going to ask him questions about the allegations involving S.T., and then proceeded to elicit incriminating statements about his relationship with W.H.  He contends that Butler's failure to inform him of all potential subjects of interrogation at the time he was read and waived his *Miranda* rights constitutes trickery and deception which was condemned in *Miranda*.

As the state court reasonably concluded, the record establishes that petitioner's waiver of his *Miranda* rights was knowing, voluntary and intelligent.  In determining whether a waiver is coerced, the court considers the following:

> First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.  Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986)

(quoting *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 2572, 61 L.Ed.2d 197 (1979)).

The Supreme Court case of *Colorado v. Spring*, 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987), relied upon by the state court, is precisely on point.   In *Spring*, the defendant was arrested on federal firearms violations, was informed of and waived his *Miranda* rights, and during the interrogation was also questioned about a murder.   The defendant claimed that the failure to inform him of all potential subjects of interrogation constituted police deception rendering the waiver of his *Miranda* rights involuntary.   The Supreme Court rejected that argument.   The Court first explained the nature of the Fifth Amendment right and the safeguards established in *Miranda*.   *Id.*, 479 U.S. at 572, 107 S.Ct. at 856 (footnotes omitted). The Court went on to find that there was no *Miranda* violation, explaining "[t]his Court has never held that mere silence by law enforcement officials as to the subject matter of an interrogation is 'trickery' sufficient to invalidate a suspect's waiver of *Miranda* rights, and we expressly decline to do so today." *Id.,* 479 U.S. at 576, 107 S.Ct. at 858.   The Court further noted, "a suspect's awareness of all the possible subjects of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege." *Id.,* 479 U.S. at 577, 107 S.Ct. at 859.

Here, as in *Spring*, petitioner alleges no "'coercion of a confession by physical violence or other deliberate means calculated to break [his] will.'" *Spring*, 479 U.S. at 573-74 (quoting *Oregon v. Elstad*, 470 U.S. 298, 312, 105 S.Ct. 1285, 1295, 84 L.Ed.2d 222 (1985)).   And even more significant in the context of this ineffective assistance claim, petitioner does not allege that <u>he made trial counsel aware</u> that he was coerced into waving his rights by physical violence or threats.[6]   His

---

[6]For the first time in his reply, petitioner asserts that he told his counsel "to try to 'get rid of the confession' because it was coerced out of him, and he did not truly understand what he was signing – Miranda or no Miranda." (Doc. 24, p. 2). He further states, "Petitioner was not afforded time to read the full documents before him and signed only where he saw an 'X', Petitioner wanted help

allegations that Deputy Butler failed to warn him that the discussion might expand beyond S.T. does not indicate that his waiver was coerced.  As the Court in *Spring* held:

> [*Spring's*] allegation that the police failed to supply him with certain information does not relate to any of the traditional indicia of coercion: the duration and conditions of detention . . ., the manifest attitude of the police toward him, his physical and mental state, the diverse pressures which sap or sustain his powers of resistance and self-control.  Absent evidence that Spring's will was overborne and his capacity for self-determination critically impaired because of coercive police conduct, his waiver of his Fifth Amendment privilege was voluntary under this Court's decision in *Miranda*.

479 U.S. at 574 (internal quotation marks and citations omitted).

Furthermore, petitioner's allegations do not suggest that his waiver was not knowingly and intelligently made, that is, that he did not understand he had the right to remain silent; that anything he said could be used as evidence against him; and that he could choose not to talk to Detective Butler, to talk to her only with counsel present, or to discontinue talking at any time.  *Spring*, 479 U.S. at 574.  Again, petitioner's allegation that he was not informed that the subject of his sexual conduct with W.H. might come up does not render his waiver unknowing.  "The Constitution does not require that a criminal suspect know and understand every

---

in answering questions, and Petitioner was pressured by the detectives." (*Id*.,pp. 2-3).  Petitioner did not present these specific factual allegations to the state court; therefore this court will not consider them.  (Ex. K., pp. 11-12).  Habeas petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petitions that were not first presented to the state courts.  *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (holding that to satisfy the exhaustion requirement, a petitioner must have presented the instance of ineffective assistance that he asserts in his federal petition "such that a reasonable reader would understand [the] claim's particular legal basis and specific factual foundation" ) (internal quotation marks omitted); *Johnston v. Singletary*, 162 F.3d 630, 634-35 (11th Cir. 1998); *Footman v. Singletary*, 978 F.2d 1207 (11th Cir. 1992).  Where a petitioner raises an ineffective assistance of counsel claim in the state court, but alleges different supporting facts than in his federal habeas proceeding, he will be deemed to have failed to fairly present the federal claim to the state court.  *Weeks v. Jones*, 26 F.3d 1030, 1044-46 (11th Cir. 1994) (rejecting petitioner's argument that "the general claim of ineffective assistance in state court preserves for federal review all alleged instances of ineffectiveness, regardless of whether evidence of a particular act was presented to the state court").

possible consequence of a waiver of the Fifth Amendment privilege.   The Fifth Amendment's guarantee is both simpler and more fundamental:   A defendant may not be compelled to be a witness against himself in any respect."   *Id.* (internal citations omitted).

As in *Spring*, even assuming (which the court does not and need not decide) that Detective Butler was aware of allegations of sexual activity between petitioner and W.H. before petitioner volunteered the information, her failure to inform petitioner of every topic about which he might be questioned does not render his voluntary, knowing and intelligent waiver invalid.   Thus, counsel was not deficient for failing to move to suppress petitioner's statement on Fifth Amendment grounds. Although the state court did not address the prejudice prong, it is worth noting that even if petitioner's statements to Detective Butler had been suppressed, petitioner has not established a reasonable probability that the outcome of his trial would have been different.   There was overwhelming evidence of petitioner's guilt in the form of his driver's license records establishing his age at the time of the offense, and W.H.'s trial testimony that she and petitioner had sexual intercourse on more than 15 occasions during a two-month period when she was 17 years old.

The state court's denial of relief on this aspect of petitioner's ineffective assistance claim was not contrary to, or an unreasonable application of, clearly established federal law and was not the result of an unreasonable determination of the facts in light of the evidence in the state court record.[7]

_____

[7]Respondent has moved to expand the record to include the amended information, verdict, and transcript of petitioner's trial on the charges involving S.T.  (Doc. 19).  Respondent argues that the transcript is relevant to the instant petition because it establishes that a tape of petitioner's confession to Detective Butler did, in fact, exist because it was admitted into evidence at that trial. The undersigned has reviewed the transcript of petitioner's trial on the charges involving S.T.  (Ex. Q).  The videotape admitted at that trial was of petitioner's confession to Detective Jim Tyson, not Detective Butler.  (Ex. Q, pp. 53-55).  Thus the relevance of that transcript has not be established.

The court further finds that the charging document and verdict in the case involving S.T. (submitted by respondent as Ex. P) are irrelevant, because it does not matter whether petitioner was ever charged or convicted of a crime involving S.T.  The relevant fact shared by the cases involving

**Ground 2      Section 794.05, Florida Statutes, Is Unconstitutional In That It Does Not Require The State To Prove Mens Rea Or Knowledge Of The Victim's Age.  (Doc. 5, pp. 8-12)**

In his second ground for relief, petitioner contends Fla. Stat. § 794.05 violates due process because it imposes strict liability without requiring proof of criminal intent, and without allowing the affirmative defense of mistake.   Respondent concedes petitioner exhausted his state court remedies with respect to this claim by raising on direct appeal.  (Doc. 20, p. 22).

A.      **Supreme Court Precedent**

It is well established that while "the existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence," strict liability offenses are not unknown to the criminal law and "do not invariably offend constitutional requirements."   *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 436-37, 98 S.Ct. 2864, 2873, 57 L.Ed.2d 854 (1978).  *See also Powell v. Texas*, 392 U.S. 514, 535, 88 S.Ct. 2145, 2155-56, 20 L.Ed.2d 1254 (1968) (noting that despite its preference for a mens rea requirement when interpreting criminal statutes, "this Court has never articulated a general constitutional doctrine of mens rea."); *Smith v. California*, 361 U.S. 147, 150, 80 S.Ct. 215, 217, 4 L.Ed.2d 205 (1959) (holding that states may "create strict criminal liabilities by defining criminal offenses without any element of scienter."); *Lambert v. California*, 355 U.S. 225, 228, 78 S.Ct. 240, 242, 2 L.Ed.2d 228 (1957) (We do not go with Blackstone in saying that a 'vicious will' is necessary to constitute a crime . . . for conduct alone without regard to the intent of the doer is often sufficient.  There is wide latitude in the

_____

S.T. and W.H. is that the allegations concerning S.T. were what caused Detective Butler to arrange an interview with petitioner.  That is not a disputed fact in the instant case.  Petitioner relies heavily on that fact to support his *Miranda*-based ineffective assistance claim, (doc. 5, pp. 5-8), and respondent does not dispute it.  In light of the foregoing, respondent's motion to expand the record will be denied.

Furthermore, as this court's analysis demonstrates, the court was able to resolve petitioner's ineffective assistance claim without expanding the record to include the documents filed in the S.T. case.  Accordingly, respondent's motion to expand the record will be denied, and neither Exhibits P nor Q considered.

lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition."); *Williams v. North Carolina*, 325 U.S. 226, 238, 65 S.Ct. 1092, 1099, 89 L.Ed. 1577 (1945) ("The objection that punishment of a person for an act as a crime when ignorant of the facts making it so, involves a denial of due process of law has more than once been overruled."); *Chicago, B. & Q. Ry. v. United States*, 220 U.S. 559, 578, 31 S.Ct. 612, 617, 55 L.Ed. 582 (1911) ("The power of the legislature to declare an offense, and to exclude the elements of knowledge and due diligence from any inquiry as to its commission, cannot, we think, be questioned."); *Shevlin-Carpenter Co. v. Minnesota*, 218 U.S. 57, 70, 30 S.Ct. 663, 666, 54 L.Ed. 930 (1910) ("[P]ublic policy may require that in the prohibition or punishment of particular acts it may be provided that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance.").

The Supreme Court has not ruled specifically when, if ever, the imposition of strict liability in a criminal statute by itself violates the Due Process Clause of the Fourteenth Amendment. Indeed, that Court has stated that no single rule resolves whether a crime must require intent to be valid. *Morissette v. United States*, 342 U.S. 246, 260, 72 S.Ct. 240, 248, 96 L.Ed. 288 (1952) ("Neither this Court nor, so far as we are aware, any other has undertaken to delineate a precise line or set forth comprehensive criteria for distinguishing between crimes that require a mental element and crimes that do not. We attempt no closed definition, for the law on the subject is neither settled nor static.");[8] *see also, e.g., United States v. Parks*, 411

---

[8]In *Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 249, 96 L.Ed. 288 (1952), the Court, in dicta, apparently accepted the validity of strict liability in statutory rape laws when it observed that, as the common law has developed, "[e]xceptions [to the requirement of a guilty mind] came to include sex offenses, such as rape, in which the victim's actual age was determinative despite defendant's reasonable belief that the girl had reached the age of consent." *Id.* at 251 n. 8, 72 S.Ct. at 244 n. 8. *See also United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 n. 2, 115 S.Ct. 464, 469 n. 2, 130 L.Ed.2d 372 (1994) (quoting footnote 8 from *Morissette*). The undersigned recognizes, however, that dicta is not "clearly established Federal law." *Williams v. Taylor*, 529 U.S. at 412 (holding that clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision.").

F.Supp.2d 856, 855 (S.D. Ohio 2005) ("Today, 50 years later, there still is no criteria for determining when a criminal intent is required and when it is not.").

One principle that is clear is that federal courts should interpret a law as one of strict liability only when the legislature clearly so intends. *Morissette*, 342 U.S. at 263, 72 S.Ct. at 249; *Staples v. United States*, 511 U.S. 600, 606, 114 S.Ct. 1793, 1797, 128 L.E.d.2d 608 (1994) ("[W]e have stated that offenses that require no *mens rea* generally are disfavored, . . . and have suggested that some indication of congressional intent, express or implied, is required to dispense with *mens rea* as an element of a crime.").

B.     State Court Decision

Petitioner raised his constitutional challenge to Fla. Stat. § 794.05 in his direct appeal.  The state court denied relief in a written opinion which reads as follows:

> On appeal from his conviction for violating section 794.05, Florida Statutes (2003), Jovan Feliciano argues that the "statutory rape law" is facially unconstitutional, in that it violates due process for failure to require proof that the defendant knew the minor's age.  We affirm.

> Mr. Feliciano was twenty-six years old by the time the brief liaison concluded.  When they began having sexual intercourse, she was only two months beyond her seventeenth birthday.  Given the disparity in their ages, his conduct violated section 794.05(1), Florida Statutes (2003), which provides:

> > A person 24 years of age or older who engages in sexual activity with a person 16 or 17 years of age commits a felony of the second degree[.]

> The statute does not require the State to prove the defendant's knowledge of the minor's age.  To the contrary, section 794.021, Florida Statutes (2003), provides that ignorance or belief as to a victim's age is no defense.

> > When, in this chapter, the criminality of conduct depends upon the victim's being below a certain specified age, ignorance of the age is no defense.  Neither shall

misrepresentation of age by such person nor a bona fide belief that such person is over the specified age be a defense.

In keeping with the statute, the jury instructions did not require any finding that Mr. Feliciano knew her age.  No objection to these instructions was lodged.  But the defense had filed-and the trial court had denied-a motion to dismiss, urging the unconstitutionality of the statute for failure to require scienter.

Cases appellant cites concerned with whether, in construing a criminal statute that is silent on the subject, a mens rea requirement should be inferred, are inapposite.  *See Staples v. United States*, 511 U.S. 600, 618, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) ("[A]bsent a clear statement from Congress that mens rea is not required, we should not apply the public welfare offense rationale to interpret any statute defining a felony offense as dispensing with mens rea."); *State v. Giorgetti*, 868 So.2d 512, 519 (Fla. 2004) ("[W]here harsh penalties apply or there is the potential to punish otherwise law-abiding, well-intentioned citizens for reasonable behavior, the [c]ourt is reluctant to impute to [the Legislature] the purpose of doing away with the mens rea requirement[.]").

Even in jurisdictions where statutes are written so that courts must decide whether legislatures intended to make knowledge of the minor's age an element of the offense, decisions on the point have gone overwhelmingly against defendants.  *See generally* Colin Campbell, Annotation, Mistake or lack of information as to victim's age as defense to statutory rape, 46 A.L.R.5th 499 (1997) (noting that "[p]rior to 1964, it was the universally accepted rule in the United States that a defendant's mistaken belief as to the age of a victim was not a defense to a charge of statutory rape"). *But see State v. Guest*, 583 P.2d 836, 839-40 (Alaska 1978) (finding it "significant that the Alaska Statutes do not proscribe fornication"); *People v. Hernandez*, 61 Cal.2d 529, 39 Cal.Rptr. 361, 393 P.2d 673, 675 (1964) (invoking the "primordial concept of mens rea"); *Perez v. State*, 111 N.M. 160, 803 P.2d 249, 251 (1990) ("When the law requires a mathematical formula for its application, we cannot say that being provided the wrong numbers is immaterial.").

As the court recognized in *Hodge v. State*, 866 So.2d 1270, 1272 (Fla. 4th DCA 2004), our statute settles the question:

> **[T]he legislature left no doubt as to its intention that this offense be treated as a strict liability crime for which the State was not required to prove criminal scienter. . . . Section 794.021, Florida Statutes (2000), unequivocally provides that ignorance or mistake of the victim's age is not a defense to the crime[.]**

**Appellant does not, indeed, argue that the statute is equivocal or doubtful in disallowing ignorance of age as a defense.**

**Because the Legislature has spoken to this issue with such clarity, statutory construction is not necessary. *See Perkins v. State*, 682 So.2d 1083, 1084-85 (Fla. 1996) ("[T]he legislature's use of clear and unambiguous language which imparts a definite meaning renders unnecessary a resort to rules of statutory construction[.]"). Florida's courts have never required proof of the defendant's knowledge of the minor's age in a statutory rape case, or recognized the defendant's lack of knowledge as an affirmative defense.**

**A question concerning the requisite knowledge arose century before last. *See Holton v. State*, 28 Fla. 303, 9 So. 716, 717 (1891) (holding that a defendant "will not be allowed to excuse himself by asserting ignorance as to her age" in affirming conviction for carnal intercourse with an unmarried female under the age of seventeen). Florida has recognized statutory rape as a strict liability crime since. *See State v. Hubbard*, 751 So.2d 552, 556 (Fla. 1999) ("'Statutes which impose strict criminal liability, although not favored, are nonetheless constitutional [.]'") (quoting *Baker v. State*, 377 So.2d 17, 18 (Fla. 1979)). "In the instance of statutory rape it is no defense that the defendant actually believed the female to be in excess of the prohibited age. *Regina v. Prince*, 13 Cox Crim.Cas. 138 (1875), early on settled the validity of statutory rape legislation." *Id.*; *Simmons v. State*, 151 Fla. 778, 10 So.2d 436, 438 (1942) (conceding that all common-law crimes require criminal intent, but approving legislative removal of the requirement, where required by public policy); *State v. Walborn*, 729 So.2d 504, 506 (Fla. 2d DCA 1999) (finding section 794.05 "reasonably related to the goal of protecting minors from sexual exploitation by adults and its age restriction . . . constitutional").**

**The present case differs importantly from *B.B. v. State*, 659 So.2d 256, 257, 260 (Fla. 1995) (declaring an earlier version of section 794.05(1) unconstitutional under Article I, Section 23 of the Florida**

Constitution, as applied to a sixteen-year-old whose "victim was also sixteen years of age"). *See Victor v. State*, 566 So.2d 354, 356 (Fla. 4th DCA 1990) (describing the purpose of section 794.05(1), Florida Statutes, as "protecting minors from sex acts imposed by adults").

Unemancipated minors are under a statutory disability that precludes consent to sexual activity with adults. *See B.B.*, 659 So.2d at 258 ("If our decision were based upon whether minors could consent to sexual activity as though they were adults, our decision would be 'no' for the reasons stated in Justice Kogan's concurring opinion in Jones v. State, 640 So.2d 1084, 1087 (Fla. 1994)."); *Schmitt v. State*, 590 So.2d 404, 411 n. 10 (Fla. 1991) ("Obviously, [unmarried] minor children are legally incapable of consenting to a sexual act in most circumstances."). "[I]t is evident beyond all doubt that any type of [adult] sexual conduct involving a child constitutes an intrusion upon the rights of that child, whether or not the child consents[.]" *Schmitt*, 590 So.2d at 410-11; *see State v. Raleigh*, 686 So.2d 621, 623 (Fla. 5th DCA 1996) (discussing "just some of the obvious reasons why the legislature has determined this defense cannot apply in such cases").

Affirmed.

*Feliciano v. State*, 937 So.2d 818, 819 -821 (Fla. 1st DCA 2006) (footnote omitted).

C.     Federal Review of State Court Decision

The Florida appellate court determined that the state legislature plainly dispensed with a mens rea requirement in § 794.05; that it intended to make the offense a strict liability crime; and that it expressly eliminated mistake of age as a defense by enacting Fla. Stat. § 794.021.  On habeas review, this court must accept the state court's determination of state law. *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.E.d2d 407 (2005) ("[W]e have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.") (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)).

Further, given the lack of clearly established Supreme Court precedent on the criteria for determining when criminal intent is required and when it is not, this court

cannot say that the state court's denial of relief on this claim is contrary to clearly established federal law. *See Isaacs v. Head*, 300 F.3d 1232, 1252 (11th Cir. 2002) ("In applying the 'contrary to' prong of § 2254(d), we have recognized that where no Supreme Court precedent is on point, we cannot say that the state court's conclusion . . . is contrary to clearly established Federal law as determined by the U.S. Supreme Court."). Petitioner has pointed to no Supreme Court precedent which has held that making statutory rape a strict liability offense is a per se violation of the Constitution.

Moreover, petitioner has not demonstrated that the state court unreasonably applied Supreme Court precedent when it determined that the Florida legislature's exercise of its power was consistent with due process. The State has a legitimate interest in protecting children from sexual involvement and in putting on the adult the burden of determining the age of the child. As the Tenth Circuit explained in rejecting an identical due process challenge to a federal statutory rape statute, 28 U.S.C. § 2241(c)[9]:

> The long history of statutory rape as a recognized exception to the requirement of criminal intent undermines petitioner's argument that the statute in question offends principles of justice deeply rooted in our traditions and conscience. *Cf. Powell v. Texas*, 392 U.S. 514, 535-36, 88 S.Ct. 2145, 2155-56, 20 L.Ed.2d 1254 (1968) ("[T]his Court has never articulated a general constitutional doctrine of mens rea."). In addition to this history, the consideration of other factors persuades us that § 2241(c) does not offend due process. The statute does not impinge on other protected constitutional rights. *See Nelson v. Moriarty*, 484 F.2d 1034, 1035 (1st Cir. 1973) (Statutory rape provision was unaffected by Supreme Court decisions relating to procreative privacy). Moreover, the statute rationally furthers a legitimate governmental interest. It protects children from sexual abuse by placing the risk of mistake as to a child's age on an older, more mature person who chooses to engage in sexual activity with one who may be

---

[9]Title 28 U.S.C. § 2241(c) proscribes sexual intercourse with a female minor under the age of twelve.

> young enough to fall within the statute's purview.  *See id.*  Such a strict
> rule may reasonably be expected to have some deterrent effect.

*United States v. Ransom*, 942 F.2d 775, 777 (10th Cir. 1991) (footnote omitted).

Given the clear intent of the Florida legislature, and petitioner's failure to demonstrate that the statute in question "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental," *Snyder v. Massachusetts*, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934), this court cannot say that the state court's conclusion that  § 794.05 does not violate due process was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.  *See also, e.g., Nelson v. Moriarty, supra* (rejecting habeas petitioner's argument that, as a matter of due process, he was entitled to assert the defense of his honest belief that the victim of the state statutory rape charge was over 16 years of age; holding "The Supreme Court has never held that an honest mistake as to the age of the prosecutrix is a constitutional defense to statutory rape . . . and nothing in the Court's recent decisions clarifying the scope of procreative privacy suggests that a state may no longer place the risk of mistake as to the prosecutrix's age on the person engaging in sexual intercourse with a partner who may be young enough to fall within the protection of the statute."); *Garrison v. Elo*, 156 F.Supp.2d 815 (E.D. Mich. 2001) (rejecting habeas petitioner's due process challenge to state statutory rape law and holding that petitioner's conviction of third degree criminal sexual conduct with a thirteen year old victim, without proof of mens rea or criminal intent, was not contrary to or an unreasonable application of clearly established federal law), *implied overruling on other grounds recognized by Friday v. Pitcher*, 200 F.Supp.2d 725 (E.D. Mich. 2002); *United States v. Brooks*, 841 F.2d 268, 269-70 (9th Cir. 1988) (outlining history of the reasonable mistake of age defense with respect to statutory rape and holding that the federal statutory rape law under which the defendant was convicted (18 U.S.C. § 2032) did not contain such a defense and "is not constitutionally required to do so.").

**Ground 3**      **Ineffective Assistance Of Counsel For Counsel's Failure To Discern Whether The Victim Was Emancipated From Her Parents.  (Doc. 5, pp. 13-15)**

Petitioner's final contention is that trial counsel was ineffective because, although counsel attempted to ascertain whether W.H. was emancipated by inquiring at deposition whether she had ever petitioned the courts or had the disabilities of nonage removed, counsel failed to inquire further when W.H. gave other "indicia" of her emancipation, namely, that while she generally resided at her father's residence she often spent time at her mother's house; that she confirmed she had her own vehicle and cell phone; that although she still attended high school, she held a job; and that she engaged in sexual activity.  According to petitioner, counsel was deficient for failing to investigate further these indicators of a "viable defense" of emancipation.  (Doc. 5, p. 14).  He states that "[e]specially taken in light of the fact that Petitioner admitted having sex with the victim, it would seem that the 'emancipation' defense would be a last chance grab to find a technical loophole out of the charges."  (Doc. 24, pp. 8-9).  Respondent concedes petitioner exhausted his state court remedies with respect to this claim by raising it in his Rule 3.850 motion. (Doc. 20, p. 26).

A.      **Clearly Established Federal Law**

The clearly established Federal law governing claims of ineffective assistance of counsel is set forth above.

B.      **State Court Decision**

Petitioner raised this claim in his Rule 3.850 motion.  After citing *Strickland* as the controlling legal standard, the trial court denied relief as follows:

> Defendant alleges his trial counsel was ineffective for failing to investigate whether the victim had previously petitioned the courts for removal of disability of non-age.  This allegation is conclusively refuted

by the record.  Defense counsel inquired at deposition whether the victim had ever taken out a loan or sought emancipation through the courts. She responded that she had not. Defendant claims his counsel should have persisted in this defense by raising the argument that the victim was emancipated under the common law definition.  This argument has no merit.  It is clear that the statutory provisions on this point have abrogated the common law.  See § 794.021; Ch. 743, Fla. Stat. (2005).  There is no provision that removes from the statute a minor emancipated at common law in the same manner as one who is statutorily emancipated.  Case law cited by Defendant regarding responsibility for debts has no bearing on this case.  Even if it did, there is no basis for finding that the victim was emancipated even at common law. Defendant states that the 17-year-old victim had her own vehicle and cell phone, held a part-time job, and engaged in sexual activity while at her parents' houses, where she resided.  None of these things support an argument that she was a legal adult.  Any motion based on them would have been denied, and defense counsel is not ineffective for failing to inquire about or intestate this matter any more than evidenced by the record.  Engle v. Dugger, 576 So.2d 696, 704 (Fla. 1991).  Ground 1 is denied.

(Ex. K, p. 110) (references to attachments omitted).

      C.     Federal Review of State Court Decision

     The state court found, as a matter of state law, that the only emancipation defense available to petitioner was that provided by the statute.  The statute under which petitioner was convicted provides that, "the provisions of this section do not apply to a person 16 or 17 years of age who has had the disabilities of nonage removed under chapter 743."  Fla. Stat. § 794.05(2).

     Chapter 743 outlines the various ways and contexts in which a minor's disability of nonage may be removed.  The disabilities of nonage of a minor age 16 or older may be removed for all purposes "upon a petition filed by the minor's natural or legal guardian, or, if there is none, by a guardian ad litem."  Fla. Stat. § 743.015(1).  Counsel ascertained at deposition that this provision did not provide a viable defense.

     The remaining sections of Chapter 743 address removal of the disabilities of

nonage in more limited and specific circumstances, for example: (1) to ensure that youth in foster care who have been adjudicated dependent are able to secure depository financial services, contract for a residential lease, etc., Fla. Stat. §§ 743.044-046; (2) to allow minors age 16 or older to borrow money for their own higher educational expenses, Fla. Stat. § 743.05; (3) to allow minors age 17 or older to give consent to donate blood, Fla. Stat. § 743.06; (4) to allow unwed pregnant minors to consent to the performance of medical or surgical care or services relating to her pregnancy or for her child, Fla. Stat. § 743.065; and (5) in other enumerated circumstances not arguably applicable here. No where in the statute is it suggested that the minor's possession of a vehicle or a cell phone, a minor's part-time employment, or a minor's participation in sexual activity provides a basis for the removal of the disabilities of nonage.

As the record conclusively demonstrates, counsel inquired of W.H. whether she had ever borrowed money to go to school or petitioned a court to have her disabilities of nonage removed. (Ex. K, pp. 101-102). The victim responded unequivocally, "No." Petitioner does not allege the existence of any other circumstances relevant to Chapter 743 that arguably applied to the victim. Thus, there is no evidence that counsel's engaging in further investigation of the issue would have been productive. As the state court reasonably determined, counsel was not deficient for failing to engage in fruitless investigation. *Rompilla v. Beard*, 545 U.S. 374, 383, 125 S.Ct. 2456, 2463, 162 L.Ed.2d 360 (2005) ("[T]he duty to investigate does not force defense lawyers to scour the globe on the off-chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste."); *Wiggins v. Smith*, 539 U.S. 510, 525, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (holding that counsel's failure to engage in further investigation is excusable where counsel has evidence suggesting it would be fruitless). And since further investigation of this line of defense would have been futile, petitioner cannot establish prejudice.

The state court's denial of relief on this claim was neither contrary to, nor an unreasonable application of the *Strickland* standard.  Nor was the state court's decision based on an unreasonable determination of the facts in light of the evidence in the state court record.  Petitioner is not entitled to federal habeas relief, and the writ should not issue.

## PETITIONER'S REQUEST FOR AN EVIDENTIARY HEARING

In both his amended petition and reply, petitioner requests an evidentiary hearing.  (Doc. 5, p. 16; Doc. 24, pp. 10-11).  "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.  Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate."  *Schriro v. Landrigan*, 550 U.S. 465, 474, 127 S.Ct. 1933, 1940, 167 L.Ed.2d 836 (2007) (citations and footnote omitted).  "It follows that if the record refutes the application's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  *Id.*

This court has carefully reviewed the record in this case, and concludes that petitioner is not entitled to an evidentiary hearing.  The pertinent facts of the case are fully developed in the record before the court.  *Smith v. Singletary*, 170 F.3d 1051, 1054 (11th Cir. 1999).  Thus, the court has been able to adequately assess petitioner's claims without further factual development.  *See Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003).  Petitioner's request for an evidentiary hearing is therefore denied.

Accordingly, it is ORDERED:

1. Respondent's motion to expand the record (doc. 19) is DENIED.

2. Petitioner's request for an evidentiary hearing is DENIED.

And it is respectfully **RECOMMENDED:**

That the amended petition for writ of habeas corpus (doc. 5), challenging the conviction and sentence in *State of Florida v. Jovan L. Feliciano* in the Circuit Court of Leon County, Florida, case no. 04-1973, be DENIED, and the clerk be directed to close the file.

At Pensacola, Florida, this 8th day of May, 2009.


/s/ *Miles Davis*

**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**



## NOTICE TO PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).